**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Demond Jamal CAMPER,**
**Defendant–Appellant.**

No. 03–50442.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 10, 2004.

Filed Sept. 22, 2004.

James H. Locklin, Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

Pegeen D. Rhyne, Assistant U.S. Attorney, Public Corruption and Government Fraud Section, Los Angeles, California, for the plaintiff-appellee.

Before: D.W. NELSON, GIBSON,* and GRABER, Circuit Judges.

GIBSON, Senior Circuit Judge:

Defendant Demond Jamal Camper appeals from his conviction of making a false statement to the government, 18 U.S.C. § 1001 (2000), when he filled out a criminal history questionnaire as part of an airport security badge application. He argues that there was insufficient evidence that his answer was false. We affirm.

## I.

In July 2000, Demond Jamal Camper pled guilty to a misdemeanor charge of carrying a loaded firearm in public without being the registered owner, in violation of California Penal Code §§ 12031(a)(1) & (a)(2)(F). In the factual basis portion of his General Misdemeanor Guilty Plea form, Camper wrote, "On 4/15/00 ... I willfully and unlawfully possessed a loaded firearm in a car. The firearm was not registered to me."

Seven months later, he applied for a job as a ramp agent at Los Angeles International Airport, a job for which security clearance was required under federal law. *See* 14 C.F.R. § 107.31. Camper filled out a security badge application, which contained a questionnaire entitled "Background Verification." The questionnaire asked, "Within the past ten years, have you been convicted ... of any of the following offenses?" The twenty-five item list that followed included "Unlawful possession, use, sale, distribution or manufacture of an explosive or weapon." Camper checked the "no" box for every crime, including the box for unlawful possession of a weapon. Camper later stipulated:

> At the time he filled out the [Los Angeles Airport] security badge application, defendant believed his July 12, 2000 conviction was a conviction for unlawful possession of a weapon. As such, defendant knowingly and intentionally made a statement that he believed was untrue when he answered "no" to the question of whether he had been convicted of "Unlawful possession, use, sale, distribution or manufacture of an explosive or weapon."

Camper was indicted for making a false statement to the government, 18 U.S.C. § 1001, in answering "no" to the weapon possession question. Camper moved to dismiss the indictment on the ground that his answer to the question was literally true because his conviction was for possessing a firearm in an unlawful manner, not for possession which was in itself unlawful. The district court denied the motion, stating:

---

* The Honorable John R. Gibson, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

Mr. Camper can be convicted of making a false statement only if his 2000 conviction constituted "unlawful possession of a weapon." I do not see any colorable argument that it didn't.

There can be no question that he possessed a weapon in the year 2000.

There can be no question that that possession was unlawful. If it were not, he could not have been convicted.

After a bench trial on stipulated facts, Camper moved for a judgment of acquittal based on the same ground as his earlier motion to dismiss the indictment. The district court denied the motion for judgment of acquittal and found Camper guilty.

The district court sentenced Camper to three years' probation, a $250 fine, and a $100 special assessment.

## II.

■ Camper alleges there was insufficient evidence of a false statement to support his conviction for perjury. Because Camper made a timely motion for judgment of acquittal at the close of all the evidence, we review his claim de novo. *United States v. Naghani,* 361 F.3d 1255, 1261 (9th Cir.2004). There is sufficient evidence if, viewing the evidence in the light most favorable to the government, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks omitted); *see also United States v. Tobias,* 863 F.2d 685, 687–88 (9th Cir.1988). Specifically, when a perjury defendant contends that he made no false statement, "Our central task is to determine whether the jury could conclude beyond a reasonable doubt that the defendant understood the question as did the government and that, so understood, the defendant's answer was false." *United States v. Sainz,* 772 F.2d 559, 562 (9th Cir.1985) (internal quotation marks omitted).

■ Camper was convicted of violating 18 U.S.C. § 1001,[1] which prohibits giving false information in any matter within the jurisdiction of a department or agency of the United States. The government must prove five elements to obtain a conviction for making a false statement under § 1001:(1) a statement, (2) falsity, (3) materiality, (4) specific intent, and (5) agency jurisdiction. *United States v. Boone,* 951 F.2d 1526, 1544 (9th Cir.1991).

Camper concedes that all elements are met except for the element of falsity. He argues that his conviction must be reversed under *Bronston v. United States,* 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973), because his response to the question was literally true.

Under *Bronston,* a defendant cannot be convicted for perjury when his statement was literally true under the only possible interpretation. Bronston was asked whether he had any Swiss bank accounts, and he answered, "The company had an account there for about six months, in Zurich." *Id.* at 354, 93 S.Ct. 595. The statement was indisputably true, as far as it went, but Bronston neglected to mention that he also had once had a personal Swiss bank account. *Id.* Bronston was prosecuted for perjury, but the Supreme Court reversed his conviction because he had not made a false statement. *Id.* at 362, 93 S.Ct. 595.

---

1. 18 U.S.C. § 1001(a)(2) (2000) provides:
Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully ... makes any materially false, fictitious, or fraudulent statement or representation ... shall be[punished].

*Bronston's* rule is limited to cases in which the statement is indisputably true, though misleading because it was unresponsive to the question asked. Different rules govern statements that are ambiguous, in which the statement may be true according to one interpretation and false according to another. This circuit distinguishes between answers that contain some ambiguity and those that are fundamentally ambiguous. *United States v. McKenna,* 327 F.3d 830, 840–41 (9th Cir.), *cert. denied,* 540 U.S. 941, 124 S.Ct. 359, 157 L.Ed.2d 254 (2003). A fundamentally ambiguous statement cannot, as a matter of law, support a perjury conviction. *United States v. Culliton,* 328 F.3d 1074, 1078 (9th Cir.2003) (per curiam), *cert. denied,* —— U.S. ——, 124 S.Ct. 1087, 157 L.Ed.2d 900 (2004). A statement is not fundamentally ambiguous simply because the questioner and respondent could possibly have had different interpretations. *Id.* at 1079. "A question is fundamentally ambiguous when men of ordinary intelligence cannot arrive at a mutual understanding of its meaning." *Id.* at 1078 (internal quotation marks omitted).

On the other hand, the existence of "some ambiguity" in a falsely answered question is generally not inconsistent with a conviction for perjury. *McKenna,* 327 F.3d at 841. The context of the question and other extrinsic evidence relevant to the defendant's understanding of the question may allow the finder of fact to conclude that the defendant understood the question as the government did and, so understanding, answered falsely. *Culliton,* 328 F.3d at 1079. Ordinarily, the finder of fact decides which of the plausible interpretations of an ambiguous question the defendant apprehended and responded to. *Id.* at 1078; *United States v. Matthews,* 589 F.2d 442, 445 (9th Cir. 1978).

The only possible ambiguity in this case arises from a mismatch in terminology between the security badge application (which is based on the requirements of federal law, *see* 49 U.S.C. § 44936(b)(1)(B)(ix) and 14 C.F.R. § 107.31(b)(2)(xx)) and the California statute under which Camper was convicted, Cal.Penal Code §§ 12031(a)(1) & (a)(2)(F). The security badge application asked if the applicant had been convicted of "any of the following offenses" and listed twenty-five offenses, some of which were peculiar to federal statutory law (e.g., "Lighting violations in connection with transportation of controlled substances") and some of which were common law crimes (e.g., "Murder" and "Treason"). The item in question was "Unlawful possession, use, sale, distribution or manufacture of an explosive or weapon."

The California statute, § 12031, "Carrying loaded firearms," defines the basic offense in part (a)(1), which forbids a person to carry a loaded firearm, either on his person or in a vehicle, while in a public place or public street in an incorporated city or prohibited area of unincorporated territory. The punishment for violation of § 12031 is prescribed in section (a)(2), according to additional facts present in a case. Camper pled guilty under section (a)(2)(F), of carrying a loaded gun *of which he was not the registered owner.* Thus, the elements of the crime to which he pled guilty were (1) carrying a loaded gun, (2) of which he was not the registered owner, (3) in a public place or street (4) in an incorporated city or in a prohibited area of unincorporated territory. "To carry a firearm" means "to possess and convey" it. *See Muscarello v. United States,* 524 U.S. 125, 126–27, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998). Section 12031 itself forbids carrying a loaded gun in a public place; to *carry a gun in violation of the statute* is to possess the gun in an unlawful manner.

Thus, Camper's answer that he had not been convicted of "unlawful possession of a weapon" was therefore false, at least according to one reasonable interpretation of the question.

However, there is another, more restrictive meaning of "unlawful possession," which arises from the definition of "lawful possession" as a term of art in the California statute, § 12031(a)(3),[2] as referring to the way in which a person acquires the item, rather than the way in which the person exercises possession. According to this meaning, carrying a firearm that one had obtained in accordance with the statute would not become "unlawful possession" even if one violated legal requirements concerning where or how one could possess the firearm.

It is important to remember that the context of the statement was a questionnaire that did not refer directly to either state or federal law (although the security badge application contained numerous references to federal laws and regulations in sections other than the questionnaire at issue). There was nothing in the context to suggest that the questionnaire's terms were to be defined by reference to anything other than common usage.

In a somewhat similar case, the Fourth Circuit recently affirmed dismissal of a false-statement indictment, also arising out of an answer to a (different) questionnaire section on an airport security badge application. *United States v. Good,* 326 F.3d 589, 591 (4th Cir.2003). The questionnaire section at issue in *Good* required the applicant to state whether she had been convicted "of the following listed crimes." *Id.*

at 591. Among the crimes on the list were "Theft" and "Dishonesty, Fraud or Misrepresentation." *Id.* at 592 & nn. 3–4. The applicant had not been convicted of any crime with those names, but she had been convicted of "embezzlement," which the court stated "has no alternative name or description under Virginia law." *Id.* at 591. The court conceded that embezzlement involved dishonesty, fraud, and misrepresentation, but it held that the language of the questionnaire asked for the name of particular crimes, not the elements of them. "Embezzlement was not a crime listed on the application. The defendant has never been convicted of any of the crimes listed on the application. Therefore, her answers were literally true." *Id.* at 592.

The part of the airport security badge application at issue in this case did not refer to "listed crimes," and so this case could be distinguished on the ground that the questionnaire did not limit itself to the name, rather than the description, of the crimes. *But see United States v. Baer,* 274 F.Supp.2d 778 (E.D.Va.2003) (dismissing false statement prosecution based on answer to "unlawful possession" part of security badge questionnaire, relying on *Good*), *aff'd,* No. 03–4557, 92 Fed. Appx. 942, 2004 WL 491065 (4th Cir.2004) (unpublished). A far more compelling basis for distinguishing *Good* is that the Fourth Circuit takes a very different approach to ambiguity than this circuit has done. In *United States v. Race,* 632 F.2d 1114, 1120 (4th Cir.1980), the Fourth Circuit held that a defendant cannot be convicted under § 1001 for an ambiguous statement:

**2.** Cal.Penal Code § 12031(a)(3) states:

For purposes of this section, "lawful possession of the firearm" means that the person who has possession or custody of the firearm either lawfully acquired and lawfully owns the firearm or has the permission of the lawful owner or person who otherwise

has apparent authority to possess or have custody of the firearm. A person who takes a firearm without the permission of the lawful owner or without the permission of a person who has lawful custody of the firearm does not have lawful possession of the firearm.

Even if we were to accept the Government's argument that the per diem clause is ambiguous, which would be the best that could be said for the Government's argument, the result would not be different [from reversal of conviction.] To be ambiguous a contract must be susceptible of at least two reasonable constructions. When the Government concedes that the clause is ambiguous, it necessarily concedes that the defendants' construction of the per diem clause, which is one of the constructions, is reasonable. Such a conclusion requires a ruling that the defendants cannot be convicted under § 1001 for a statement or billing which may be said to be accurate within a reasonable construction of the contract. This is so because one cannot be found guilty of a false statement under a contract beyond a reasonable doubt when his statement is within a reasonable construction of the contract.

This per se rule against perjury conviction for an ambiguous statement contrasts with Ninth Circuit law holding that, even when a question has two plausible meanings, where the evidence proves that the defendant understood one such meaning and answered falsely to it, a jury can convict for false statement. *See Matthews,* 589 F.2d at 445; *United States v. Carrier,* 654 F.2d 559, 562 (9th Cir.1981) (distinguishing *Race* and interpreting *United States v. Weatherspoon,* 581 F.2d 595 (7th Cir.1978), as stating, "[I]f there is sufficient evidence to show that the defendant acted knowingly and willfully, the question of honest misinterpretation is precluded, unless the form is so vague on its face as to violate the due process clause as a matter of law."); *see generally supra* at 6–7.

Following the Ninth Circuit's approach to cases of perjury based on ambiguous statements, we conclude that the questionnaire was not fundamentally ambiguous so as to preclude the possibility that question-

er and answerer had the same meaning in mind. We conclude that there are two plausible meanings and there is relevant extrinsic evidence as to which construction Camper placed on the question. The crucial evidence about Camper's understanding of the phrase "unlawful possession" comes from his written guilty plea form for the state conviction, where he stated, "On 4/15/00 in OC, I willfully and unlawfully possessed a loaded firearm in a car. The firearm was not registered to me." Thus, Camper used the phrase "unlawfully possessed" to refer to the offense for which he was convicted. This evidence is bolstered by Camper's stipulation of facts in this case: "At the time he filled out the [Los Angeles Airport] security badge application, defendant believed his July 12, 2000 conviction was a conviction for unlawful possession of a weapon." This evidence does not merely prove Camper's state of mind or intent to lie, but it also shows that he thought the crime for which he had been convicted was denoted by the words "unlawful possession ... of a weapon."

We determine that a reasonable finder of fact could conclude on the evidence in this case that the questionnaire asked, and Camper answered, a question about convictions for possessing a gun in an unlawful manner. The evidence was sufficient to support the conviction.

AFFIRMED.